**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 19-03991-JW |
| | Chapter 13 |
| Jessica E Kinsale, | |
| Debtor(s). | **AMENDED ORDER DENYING CONFIRMATION AND MOTION TO MODIFY CHAPTER 13 PLAN**[1] |

This matter comes before the Court upon the confirmation of a proposed chapter 13 plan filed on October 11, 2019 ("Proposed Plan") by Jessica E. Kinsale ("Debtor"). An objection to confirmation of the Proposed Plan ("Objection") was filed by Kirk Shawn Kinsale ("Mr. Kinsale") on November 1, 2019. A confirmation hearing was held where the Court indicated that it would deny confirmation of the Proposed Plan. After that indication, Debtor made an oral motion to modify the chapter 13 plan, which the Court took under advisement. This Order memorializes the Court's denial of confirmation and addresses Debtor's motion to modify the chapter 13 plan. Pursuant to Fed. R. Civ. P. 52, which is made applicable to contested matters by Fed. R. Bankr. P. 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law.[2]

**FINDINGS OF FACT**

1.  Debtor and Mr. Kinsale were previously married. During the marriage, they operated a day care business, which was registered with the South Carolina Secretary of State as Magnanimous Kids Childcare SVC. LLC ("Original Daycare Business"), located at 10115 Farrow Road in Blythewood, South Carolina.

---

[1] The Order is amended pursuant to Fed. R. Civ. P. 60(a) to correct minor scrivener's errors and omissions that resulted due to a computer issue. This amended order makes no substantive changes to the Court's holdings.

[2] To the extent the following findings of fact are conclusions of law, they are adopted as such, and vice versa.

2. In 2013, divorce proceedings were commenced between Debtor and Mr. Kinsale, and on June 30, 2015, the state family court entered a final divorce decree ("Divorce Decree"). The Divorce Decree held that both parties owned an equal share of the Original Daycare Business, which had a stipulated value of $493,321.00 based upon a valuation conducted by an independent party, and that the parties were required to immediately list the business for sale with Mr. Kinsale responsible for overseeing the sale. The Divorce Decree provided that Debtor was required "to allow reasonable and timely access to any real estate agent/broker, potential purchaser and to [Mr. Kinsale]." Debtor was also required under the Divorce Decree to "continue to operate the business and keep it as going concern and . . . continue to service and pay all debt associated with the business in a timely manner."

3. It appears the Original Daycare Business ceased operations around October of 2017 as a result of a pending sale of real and personal property to Whaley Street Properties, LLC

4. On November 7, 2017, the state family court entered an Order of Contempt, which found that Debtor has failed to pay the property taxes on the Original Daycare Business for 2015 and 2016, resulting in a tax sale of the property. As a result of the tax sale, the Court found the parties had "to accept a 'fire sale' offer to purchase the [Original] Daycare . . . with a contract sales price of $250,000.00, plus an additional $5,000.00 for the personal property, a sales figures substantially less than the stipulated value of the [Original] Daycare business and assets as set [in the Divorce Decree]." The family court found that while Mr. Kinsale attempted in good faith to sell the Original Daycare, Debtor "had not cooperated in the sale of the property or protected the asset . . . ."[3]

---

[3] *See* Ex. A, Family Ct. Contempt Order entered Jan. 6, 2020 at p. 4–5.

5.      It appears Debtor opened a new daycare business, named Magnanimous Kids Learning Center ("New Daycare Business"), around October of 2018 at the location of 1215 N. Brickyard Road, Columbia, South Carolina.

6.      On July 30, 2019, Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code. Under Question 4 of the petition, Debtor indicated that she has not used any business names or Employer Identification Numbers. Under Question 12 of the petition, Debtor answered no to "Are you a sole proprietor of any full or part-time business?" Under Question 5 of the petition where you live, Debtor answered 1215 N. Brickyard Road, Columbia, South Carolina, the location of the New Daycare Business.

7.      On August 9, 2019, Debtor filed her schedules and statements and proposed chapter 13 plan. Relevant items of these documents include:

- Under Non-publicly traded stock and interests in incorporated and unincorporated business, including an interest in an LLC, partnership and joint venture under Schedule A, Debtor listed "Magnanimous Kids Learning," including some but not all of the assets of the business and stating that " business expenses and debts are larger than income and assets." Debtor lists the value of the business as $0.00. Debtor later amended her schedule to assert the business has a value of $5,068, removing the statement that the business's expenses and debts are greater than its assets and income.
- Debtor's Schedule D indicated she owes one secured claim, a claim of the Internal Revenue Service ("IRS") in the amount of $13,974.76. The IRS's claim filed in this case asserted that it is not a secured claim but a priority unsecured claim in the amount of $14,016.94.
- Debtor's Schedule E/F indicated no priority unsecured claims, and 240,135.15 in non-priority unsecured claims, of which $112,106 of this amount were for claims owed to Mr. Kinsale or his family court's counsel. Of the actual claims filed in Debtor's case, Mr. Kinsale and his family court's counsel constitutes 54.5% of Debtor's non-priority unsecured claims.
- Schedule H indicated that "Magnanimous Kids" at 1215 N. Brickyard Road, Columbia, South Carolina is a co-debtor to Debtor as to the claims of Internal Revenue Service and C. Jeff Stroud AIA Architect, Inc. On Schedule E, Debtor indicated that the claim of C.

3

    Jeff Stroud AIA Architect, Inc. was incurred on November 10, 2017 for "architect services open daycare and plans[.]"[4]

- On Schedule I, Debtor listed her employer as "Magnanimous Kids Learning Center" at 1215 N. Brickyard Road in Columbia, South Carolina and indicated she receives monthly gross wages, salary, and commissions of $2,340.50 a month. Debtor's Schedule I indicated that Debtor receives no income from operating a business. Further, she indicated that her non-filing spouse has monthly gross wages, salary and commissions in the amount of $1,606.

- The New Daycare Business's expenses, debts and executory contracts are not designated or otherwise specified in the schedules. It appears Debtor's schedules did not include certain executory contracts related to the New Daycare Business, including the leases for the building and playground sets.

- Under her Statement of Financial Affairs, Debtor listed "Magnanimous Kids Childcare" located at 1215 N. Brickyard Road in Columbia, South Carolina as a business she owned within the four years prior to her filing the bankruptcy petition. For the dates that the business existed, Debtor indicated January 10, 2010 to October 24, 2017 and October 1, 2018, to the date of petition.[5] Debtor did not specify whether the business was a sole proprietorship, an LLC, or a partnership as required by the Statement of Financial Affairs. Debtor listed only the Employer Identification Number for the New Daycare Business.

- In Debtor's Statement of Current Monthly Income and Calculation of Commitment Period, Debtor indicated that her spouse's average income for the six months prior to the filing of her petition was $461.89 but listed her spouse's income as $0.00 for purposes of calculating her average monthly income.

8.     On October 11, 2019, Debtor filed the Proposed Plan. Under the Proposed Plan, Debtor proposes to pay $380 per month for 60 months to the Chapter 13 Trustee to be disbursed to her creditors. In total, Debtor proposes to pay $22,800 to the Trustee over the term of her bankruptcy case.

9.     On November 1, 2019, Mr. Kinsale filed the Objection to the confirmation of the Proposed Plan. The Objection alleged that Debtor's plan was not feasible, that the plan was not filed in good faith, that the plan does not provide for full payment of domestic support obligations,

---

[4] It appears Debtor began renting the building at 1215 N. Brickyard Road around November 2017, but as it was not zoned for commercial activity, the landlord did not require Debtor to make full payments on the lease until sometime in 2018 when the property was approved for commercial use.

[5] Debtor's schedules only indicated that the business existed from "1/10/2010-10/24/2017, 10/01/2018[.]" Debtor testified in her deposition that the "10/01/2018" was to indicate that the business has been open since 10/01/2018 to the present and not that a business was opened for only the month of October 2018.

4

and that Debtor is not paying creditors the amounts that would be paid under a chapter 7 liquidation in violation of 11 U.S.C. § 1325(a)(4).[6] Among other items, Mr. Kinsale alleged that Debtor has been misreporting assets and expenses from the New Daycare Business and using the present bankruptcy case to hide assets.

10. On November 19, 2019, the Court granted relief from the automatic stay to allow the state family court to issue a final order for matters heard at a hearing held pre-petition on May 16, 2019. Thereafter, the state family court entered a Contempt Order on January 6, 2020. In that order, the family court noted that Debtor's financial disclosure filed in that court "intermingled her personal and business expenses and failed to itemize which of the expenses on her financial declaration were personal and which were business." The family court's order also noted "that based on the testimony of [Debtor at the May 16, 2019 hearing], she lives where she works and, therefore, her rent, utilities and other living expenses are being paid for by the business." The family court also found that Debtor's monthly net income from the New Daycare Business was between $4,000 and $4,500 based upon her financial declarations. Under the order, the family court found Debtor liable to Mr. Kinsale for the lost equity that resulted from the emergency sale of the Original Daycare Business.

11. On May 1, 2020, the parties conducted a deposition of Debtor, the transcript and related exhibits of which were later submitted into evidence in their entirety. The deposition testimony included several relevant items to this matter, including:

- Debtor indicated that in July 2019, she moved to and lived at 222 West Bowmore Drive in Blythewood, South Carolina, and that she previously lived at 156 Fallstaff Road in Columbia, South Carolina, an address not listed on her Statement of Financial Affairs. She also indicated that she never lived at the New Day Care Business, 1215 North Brickyard Drive in Columbia, South Carolina.

---

[6] Further citations to the Bankruptcy Code (11 U.S.C. § 101, *et al.*) shall be by section number only.

5

- Debtor also indicated that she does not "go by 'Jessica Jones'" and that she has not used any name other than Jessica Kinsale for the past eight years.

- Debtor confirmed that she did not include all of her current spouse's income in the Statement of Current Monthly Income and Calculation of Commitment Period, stating that she did not include the money her current spouse made "on the side" because she did not have documentation to account for it.

- Debtor indicated that she does not have a bank account for the business but shares a personal bank account with her daughter and that the account is used to pay some expenses of the business.

- Debtor indicated that some clients of the New Daycare Business pay their tuition in cash and that she pays certain expenses in cash from those received funds.

- At the deposition, Debtor's 2018 income tax return was presented. The tax return indicated that the New Daycare Business was a sole proprietorship by including a Form 1040 Schedule C, Profit or Loss from Business (Sole Proprietorship). That schedule indicated that Debtor had gross receipts of $19,834 from the operations of the New Daycare Business for a portion of 2018 and that her only business expenses for this period were $947 for supplies.

12.  At the confirmation hearing, Debtor's counsel indicated that a reason for Debtor filing a petition under chapter 13, instead of chapter 7, was because Mr. Kinsale's claims would not be discharged in a chapter 7 case pursuant to § 523(a)(15). Considering these statements and the minimum value of her nonexempt estate assets, as well as the fact that Mr. Kinsale's claim constitutes a majority of the filed non-priority unsecured claims, it is apparent that one of the chief reasons Debtor filed this chapter 13 bankruptcy case was to discharge her obligations owed to Mr. Kinsale pursuant to the order of the state family court.

13.  Also at the confirmation hearing, Debtor testified to several items relating to this matter, including:

- While Debtor has made all payments that have come due to the Trustee under the Proposed Plan, it appears that for last few months, the New Daycare Business was operating at a deficiency because she was approximately $2,700 behind on utility expenses, the playground set leases, and other leases.

- Debtor testified that she may use the name Jessica Jones in situations where the other party has an expectation that she use the last name of her current spouse. In fact, Debtor executed a lease entered shortly after the filing of the petition in the name of Jessica Jones for the location of the New Daycare Business.

6

14. Based upon her Proposed Plan, Debtor seeks to pay a total of $22,800 to creditors over the course of her bankruptcy case. As Debtor owes a priority unsecured claim in the amount of $14,016.94 as well as a priority administrative expense for attorney's fees in the present amount of $3,143.00 (which is likely subject to being increased due to the extra work required in this matter, including counsel's attendance at the deposition and contested hearing), it appears there will be little, if any, dividend remaining to be paid to non-priority unsecured creditors, including Mr. Kinsale.

## CONCLUSIONS OF LAW

### Denial of Confirmation

Section 1325(a) of the Bankruptcy Code provides that the Court shall confirm a plan if, among other items, "(3) the plan has been proposed in good faith and not by any means forbidden by law; . . . [and] (6) the debtor will be able to make all payments under the plan and to comply with the plan . . . ." "Debtor has the burden of proof at confirmation." *In re Namie*, 395 B.R 594, 596 (Bankr. D.S.C. 2008).

In *Namie*, this Court outlined the determination of whether a chapter 13 plan was filed in good faith:

> Notwithstanding the test formulated under 11 U.S.C. § 1325(b), a debtor must propose a plan in good faith pursuant to 11 U.S.C. § 1325(a)(3). *See In re Edmunds*, 350 B.R. 636, 648 (Bankr. D.S.C. 2006). Fourth Circuit case law requires the Court to consider the totality of the circumstances to determine whether "there has been an abuse of the provisions, purpose, or spirit of Chapter 13 in the proposal or plan." *Neufeld v. Freeman*, 794 F.2d 149, 152 (4th Cir. 1986). The good faith inquiry is fluid in that no single factor is dispositive on the issue of good faith and the Court will not simply count the factors weighing for or against Debtor to determine good faith or lack thereof. *See In re Solomon*, 67 F.3d 1128, 1134 (4th Cir. 1995).

*Id.* In *Neufeld v. Freeman*, the Fourth Circuit set forth a non-exclusive list of factors to consider in such determinations: "Factors to be considered include, but are not limited to, the percentage of

7

proposed repayment, the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor." 794 F.2d 149, 152 (4th Cir. 1986). Further, the *Neufeld* Court added the following to these factors:

> [A]lthough the discharge of an obligation which would be nondischargeable in Chapter 7 is not, standing alone, a sufficient basis on which to find bad faith or deny confirmation, it is a relevant factor to be considered in the § 1325(a)(3) good faith inquiry. Resort to the more liberal discharge provisions of Chapter 13, though lawful in itself, may well signal an "abuse of the provisions, purpose, or spirit" of the Act, especially where a major portion of the claims sought to be discharged arises out of pre-petition fraud or other wrongful conduct and the debtor proposes only minimal repayment of these claims under the plan. Similarly, a Chapter 13 plan may be confirmed despite even the most egregious pre-filing conduct where other factors suggest that the plan nevertheless represents a good faith effort by the debtor to satisfy his creditors' claims.

*Id.* at 152–53.

In the present matter, Debtor has taken inherently inconsistent positions between her petition, schedules, statements and her testimony at her deposition and before the Court. First, the petition, schedules and statements are inconsistent regarding the nature of the New Daycare Business. Debtor's petition, schedules and statements give the impression that the New Daycare Business is incorporated and separate from Debtor personally. Specifically, Debtor indicated in her petition that she was not the sole proprietor of any business. In Schedule H, Debtor listed "Magnanimous Kids", which appears to be the New Daycare Business, [7] as an <u>entity</u> that is a co-debtor with her on certain claims. In her Statement of Financial Affairs, she listed the Old Daycare Business, which was a limited liability company, and the New Daycare Business as a single

---

[7] One of the debts that lists Magnanimous Kids as a co-debtor is owed to C. Jeff Stroud AIA Architect, Inc., which Schedule E/F indicates was incurred in November of 2017 and described as "architect services to open daycare and plans."

8

continuous business operation, and she failed to indicate whether the business or businesses were a sole proprietorship or limited liability company as required by the form. Further, Debtor's Schedule I indicated that she is employed by "Magnanimous Kids Learning Center" for which she receives "wages, salary, and commissions[,]" and indicated that $0.00 of her income is from operating a business. In addition, Debtor's Schedule A only indicated that Debtor is a 100% owner of "Magnanimous Kids Learning" without specifying whether the business is incorporated or a sole proprietorship.

While these documents give the impression that the New Daycare Business is a separate, incorporated entity from Debtor, Debtor's 2018 tax returns, which contained a verification of review and attestation by Debtor, and her testimony at the hearing indicated that she treated the New Daycare Business as a sole proprietorship.[8]

While Debtor testified that her schedules factored in the income and expenses of the New Daycare Business, it is apparent that certain items related to the New Daycare Business were omitted from the schedules, including relevant executory contracts such as the lease of the building that houses the New Daycare Business,[9] and the leases on playground sets used in the business.

The inconsistencies and omissions are not isolated to the nature of the New Daycare Business. Debtor's petition and schedules failed to properly indicate where she lived both prior to and at the time of petition. Specifically, the petition indicated that she lives in the building that houses the New Daycare Business, 1215 N. Brickyard Drive. In addition, her Statement of

---

[8]  Upon cross-examination, Debtor said that she thought the schedules and statements did not include the business and that she was confused, despite having the assistance of experienced bankruptcy counsel.

[9]  Debtor's counsel indicated that the lease for the building that houses was not executed until post-petition on September 2019 and therefore, did not need to be disclosed. However, it is clear that the New Daycare Business has been located in that building since at least October 2018, and the Court finds it highly unlikely for Debtor to have occupied that property without some type of lease entered prior to September 2019, which should have been disclosed in the schedules.

Financial Affairs indicated that prior to 1215 N. Brickyard Drive, she lived at 238 Castlebury Drive until July 2018. However, during her deposition testimony, Debtor indicated that she never lived at the 1215 N. Brickyard Drive but that from July 2018 to July 2019, she lived at 156 Fallstaff Drive, which was not disclosed in her schedules. Considering the state family court found in its January 6, 2020 Order that "based on the testimony of [Debtor at the May 16, 2019 hearing], she lives where she works[,]"  there are serious questions of whether this inconsistent representation was intentional to match her apparent prior testimony in the state family court.

The Court also notes that Debtor omitted certain relevant aliases in her petition. The petition only states that Debtor has used the name Jessica E. Kinsale in the past eight years. She separately confirmed this statement during her deposition testimony. However, the petition fails to list the New Daycare Business as an alias, despite it being operated as a sole proprietorship. Debtor's own schedules and statements also indicate that a she was involved in a pre-petition eviction lawsuit, in which the caption listed her name as "Jessica Jones." In addition, at the hearing, it was indicated that Debtor's recent post-petition lease used to operate the New Daycare Business entered on September 2019 listed her as Jessica Jones. Upon cross-examination, Debtor testified at the hearing that she uses the name Jessica Jones primarily when the other party has an expectation that she uses her current spouse's last name. The Court finds that explanation dubious.

In addition, Debtor's schedules and statements take inconsistent positions regarding her current spouse's income. On her Statement of Current Monthly Income and Calculation of Commitment Period, Debtor indicated that her current spouse's income for the last six months averaged $461.89, but then listed his income as $0.00 for purposes of calculating her monthly income to determine commitment period, despite being required to list his income by the form. However, on her Schedule I, Debtor indicated that she anticipates her spouse's monthly income to

10

be $1,710.17, in part due to her spouse starting a new job. But, in her deposition, Debtor indicated that her calculation of her spouse's average income for the last six months did not reflect all of his income as she only reflected his work from his employment with Richland County Recreation for which she could account and not his independent personal training services that he provides "on the side." This is in direct contravention of the form's instructions for Debtor to "[f]ill in the average monthly income that you received <u>from all sources</u> . . . ." Debtor also admitted that the calculation of her spouse's income in Schedule I was incorrect as she indicated the amount reflected as to her spouse's August Band Camp "is a definite incorrect number that was on there."

In assessing this evidence, the Court cannot discount that Debtor has a history of not properly reporting her income. Specifically, the state family court that presided over Mr. Kinsale and Debtor's divorce proceedings found that Debtor's financial declaration filed in that matter "significantly underreported her gross monthly income to the [Family] Court." Debtor has shown systematically varying amounts in her past reporting of her income. For example, her 2018 tax return indicated that she had only $947 in expenses for the period that she operated the New Daycare Business in 2018 and that she had gross receipts of $19,834. However, based on the information she provided to the state family court, that court found that as of May 2019, the New Daycare Business produced net income of $4,000 to 4,500 a month, and her Schedule I indicates that the business produces $2,340.50 per month. In circumstances where the debtor is self-employed, the income of which will be the primary source to fund the proposed chapter 13 plan, clear disclosure and consistent documentation of business income and expenses is critical for the determination of good faith and feasibility.

A key concern expressed by the objecting creditor, Mr. Kinsale, is the inability to receive a clear picture of Debtor's financial position, especially the New Daycare Business, to determine

11

whether she is complying with the requirements of the Bankruptcy Code. Mr. Kinsale alleges that Debtor is undervaluing and underreporting her income because much of the business of the New Day Care is on a cash basis, which she has not reported. Debtor does not dispute that many of her of the transactions for the New Daycare Business are in cash. As was evident in the deposition of Debtor, much of the documents that she has produced to counsel for Mr. Kinsale regarding her New Daycare Business were documents created by Debtor without any independent verification, such as copies of leases, bank statements, invoices, or expense receipts. In essence, it appears that Debtor expects Mr. Kinsale and the Court to take her word on the expenses and gross income of the New Daycare Business, despite her prior history of a lack of cooperation and truthfulness as observed by the state family court.

This Court is also concerned with the veracity of Debtor's financial disclosures and testimony in this case, especially in terms of the New Daycare Business. It is apparent that the Debtor's petition, statements and schedules contain omissions, errors and inconsistencies, despite her representation by experienced bankruptcy counsel.

The importance of schedules and statements was discussed by this Court in *In re Simpson*:

> Since bankruptcy schedules and statements are carefully designed to elicit certain information necessary for the proper administration of cases, Debtors' have a duty to complete these documents thoughtfully and thoroughly. Furthermore, accuracy, honesty, and full disclosure are critical to the functioning of bankruptcy and are inherent in the bargain for a debtor's discharge. Therefore, debtors are responsible for disclosing an accurate and complete schedule of assets with proper values and a truthful statement of affairs in order to convey a complete and accurate portrayal of their financial situation.

*In re Simpson*, 306 B.R. 793, 797–98 (Bankr. D.S.C. 2003) (dismissing a case with prejudice because the debtor's schedules and statements did not fully disclose all assets and his schedules and statements were inaccurate). "The purpose of the schedules is to ensure that there is adequate information available to the debtor's creditors—there should be no independent duty placed upon

the creditors to conduct an investigation to ensure that the information in the schedules and statements is true, accurate and complete." *In re Seung Chan Park*, 480 B.R. 627, 639 (Bankr. D. Md. 2012). "Creditors should not have to 'drag the truth' from the debtor and the debtor should be required to abide by the 'cardinal rule: when in doubt, disclose.'" *Id.* (quoting *In re Halishak,* 337 B.R. 620, 630 (Bankr. N.D. Ohio 2005)). While Debtor may believe these inconsistencies are not prejudicial to her creditors, the bankruptcy process is dependent upon full and complete disclosure of a debtor. The failure to provide consistent, full and complete disclosure casts serious doubt about the accuracy of the petition, schedules and statements that were sworn and submitted under penalty of perjury. Further, Debtor's "11th hour" excuse that she did not understand the questions was not credible to the Court as she appeared capable, articulate, familiar with business matters and she had experienced bankruptcy counsel.

Further, the accuracy of disclosures should have been resolved either prior to or shortly after the filing of her petition, and yet they remain unclear now, even after a § 341 meeting of creditors and a deposition of Debtor, almost 300 days after the filing of her petition. The Court is concerned with the delay and lack of credibility in this case. The state family court issued multiple orders citing Debtor's delay in taking action required under the Divorce Decree as to the sale of the Original Daycare Business. Specifically, the state family court found that Debtor did not cooperate with the realtor hired to sell the property, including refusing to allow the realtor to show the property to prospective buyers, that Debtor delayed the execution of the contract of sale for the Original Daycare Business (such that the state family court provided that the Clerk of Court for Richland County may execute the contract of sale if Debtor did not cooperate by a certain date), and that the parties were required to conduct an emergency sale of the Original Daycare Business

13

at a decreased price because Debtor failed to pay the property taxes as required by the Divorce Decree.

Mr. Kinsale's claim is based upon the state family court's January 6, 2020 order that found that Debtor should be liable for the loss in equity of the Original Daycare Business in the amount of $101,824.18 due to Debtor's wrongful conduct in not paying the property taxes. Further, it is apparent that Debtor elected to file the present bankruptcy case under chapter 13 because Mr. Kinsale's claim would not be dischargeable under chapter 7. Based upon the claims register, Mr. Kinsale's claim constitutes a majority of the non-priority unsecured claims and Debtor's Proposed Plan will make minimal, if any, payments to Mr. Kinsale.

Taking all of these items into consideration and after reviewing the entire record, the Court finds, based on the totality of the circumstances, that the Proposed Plan was not proposed in good faith.

In addition, confirmation should be denied because the Proposed Plan is not feasible. The central source of income for Debtor to fund the Proposed Plan is her income generated from the New Day Care Business. At the hearing, it was established that Debtor has recently been operating the business at a loss, including being overdue on critical expenses of utilities, playset leases, and a water machine lease. Through April 23, 2020, Debtor reported an overall deficiency of approximately $2,700, an equivalent of over seven months' worth of payments to be made to the Trustee under the Proposed Plan. As a result, the Court is not convinced that Debtor can consistently make the $380 payments to the Trustee required under the Proposed Plan. While Debtor indicated that her sister may gift her the funds necessary to complete her plan payments, the Court finds this to be too speculative as Debtor did not present the testimony of her sister to collaborate this alleged gift.

For these reasons, the Court denies confirmation of Debtor's Proposed Plan filed on October 11, 2019.

## Motion to Modify Plan

Local Bankruptcy Rule 3015-3 provides that "[i]f confirmation of the chapter 13 plan is denied, the Court may enter an order requiring a new or modified plan or an order dismissing or converting the case without further notice or hearing."[10] The opportunity to modify a proposed chapter 13 plan after the denial of confirmation is not an affirmative right of the debtor, but must be requested and affirmatively granted by the Court. *See* 11 U.S.C. § 1307(c)(5) (2020) (providing that the denial of confirmation and the "**denial of a request made for additional time for filing another plan or a modification of a plan**" may constitute cause for dismissal) (emphasis added).

In considering the request to modify the Proposed Plan in the present matter, the Court cannot overlook the inconsistencies in Debtor's sworn documents and testimony, which has led to doubts of her truthfulness and credibility. It does not appear that these inconsistencies have been or could effectively be resolved by the filing of amended petition, schedules, statements or plan. Further, as Debtor's main source of income, the New Daycare Business, is presently operating at a loss, and Debtor has indicated that she is not willing to sell the business, it appears likely that any amended plan would be futile. *See In re Wade*, 589 B.R. 34 (Bankr. N.D. Ga. 2019) ("a debtor who has no prospect of producing a confirmable plan is subject to having his or her case dismissed 'for cause' [under § 1307(c)(5)]").

For these reasons and after full consideration of the record, the Court denies Debtor's motion to modify the plan. While the District's local bankruptcy rules provide notice of and permit dismissal upon denial of confirmation without a further hearing, the Court will permit Debtor an

---

[10] The Court notes that under SC LBR 1017-2, the Court may dismiss the case if confirmation is denied.

15

opportunity to file a notice of conversion to chapter 7. If a notice of conversion is not filed within 10 days after the entry of this Order, the Chapter 13 Trustee may submit an order or petition to dismiss this case.

## CONCLUSION

For the foregoing reasons, the Court denies confirmation of Debtor's proposed plan filed on October 11, 2019 and Debtor's motion to modify the proposed plan requested at the hearing held on May 7, 2020.

**AND IT IS SO ORDERED.**

Columbia, South Carolina
June 2, 2020

**FILED BY THE COURT**
**06/02/2020**



*/s/ John E. Waites*
US Bankruptcy Judge
District of South Carolina

Entered: 06/02/2020